# THE OHIO, INDIANA & WESTERN RAILWAY CO.
## v.
## THOMAS J. JOHNSON, ADMINISTRATOR.

*Railroads — Personal Injuries — Servants — Brakeman — Projecting Water Spout—Jerk of Train—Evidence—Instructions—Damages.*

1. In an action to recover from a railroad company, damages for the death of one of its servants, through being struck by a projecting water spout, this court declines to interfere with a verdict for the plaintiff.

2. An objection to an instruction touching the measure of damages will not be considered, where the sum awarded is less than the wages of deceased, less living expenses, would have amounted to up to the time of his becoming of age.

[Opinion filed January 21, 1889.]

APPEAL from the Circuit Court of McLean County; the Hon. O. T. REEVES, Judge, presiding.

Messrs. FRANK Y. HAMILTON, JAMES S. EWING and C. W. FAIRBANKS, for appellant.

Messrs. NEVILLE & LINDLEY, for appellee.

In no case in the reports has it been held, in a suit by an administrator for injuries causing the death of a minor, where the next of kin was a parent, that the jury should be limited in the measure of damages to the loss of services during minority.

In Rockford, R. I. & St. Louis R. R. Co. v. Delaney, 82 Ill. 198, an instruction had been given at the instance of the plaintiff (p. 199), that as to the question of damages, they should take into consideration the value of the services of the deceased from the time of his death until he would have been twenty-one years of age, deducting therefrom what it would be worth to feed and clothe him during that period, as proved.

This instruction was given at the request of the plaintiff, and was complained of by the defendant railroad company.

The instruction does not limit the jury, in estimating the damages, to the value of the minor's services during minority, less the cost of food and clothing, but simply told the jury that they should take these things into consideration. The suit was for the death of a boy nine years of age.

The court, on page 199, quote approvingly from their language in the case of The City of Chicago v. Scholten, 75 Ill. 468, in which they had said: * * * "In such cases (i. e., where the next of kin is a parent) the pecuniary loss may be estimated, from the facts proven in connection with the knowledge and experience possessed by all persons in relation to matters of common observation. No doubt the damage could be greatly enhanced by proof of the personal characteristics of the deceased. Evidence of his mental and physical capacity to be of service to his father in business, his habits of industry and sobriety, where the

deceased was old enough to have an established character, are all elements to be considered in assessing pecuniary loss sustained."

The parent is not limited in his recovery to damages for the loss of those services only, which he had a legal right to demand and enforce from the child. The pecuniary loss, which is for the jury to determine from the evidence, in many cases would be far greater. Indeed, in many cases where the minor was of a filial disposition, a greater pecuniary loss might occur after the child would have reached its majority than while it was yet a minor.

On this subject of the measure of damages to a parent for the death of a minor child, we wish to call the court's attention to what has recently been held by the Court of Appeals of New York in the case of Birkett v. Knickerbocker Ice Co., 18 N. E. Rep. 108. The deceased, in that case, was a minor daughter four and one half years of age. We quote from the language of that court, on page 110: "The jury were not bound, in estimating the compensation to be made for the death of the child, to confine their considerations to her minority." * * * "In certain contingencies she might, after her majority, owe him (the father) the duty of support, which could, by legal proceedings, be enforced, and after that event she might, in many ways, be of great pecuniary benefit to him." In estimating the pecuniary value of this child to her next of kin, the jury could take into consideration all the probable or even possible benefits which might result to them from her life, modified, as in their estimation they should be, by all the chances of failure or misfortune. Birkett v. Knickerbocker Ice Co., No. 18 N. E. Rep. 108–110; Potter v. Chicago, etc., R. R. Co., 22 Wis. 615.

Conger, J. This was an action brought by appellee, who was the father and administrator of George L. Johnson, deceased, to recover damages for his death, upon the train of appellant, upon the 29th of February, 1888.

The deceased, who was seventeen years old at the time of his death, and had been working upon appellant's road at odd

times for a year or more, on the 14th of February signed an application for employment, in which his age was written twenty-one, and went to work upon the road as a brakeman.

The appellee testified that he told Green, the conductor of the freight train, not to employ his son, as he was too young for such work. This conversation is denied by Green. On the 29th day of February, 1888, conductor Green's train, the local freight, consisting of seventeen or eighteen cars, with a coal car next to the engine, and immediately behind the coal car two Illinois Central box cars, was going east from Peoria to Bloomington.

About three-fourths of a mile west of Bloomington is Sugar Creek, and the railroad from the west has a slight down grade to the bridge across the creek.

About fifty or sixty feet west of this creek, on the south side of the track, appellant had, a few months previous, erected a temporary water station, for the purpose of supplying their engines with water; the pipe was of iron, two and one half inches in diameter, and stood five feet south of the rail, eleven feet and four inches high, with a horizontal arm seven feet long, which would turn on the upright; at the end of the horizontal arm another pipe extended downward two feet and eight inches. This swinging horizontal arm it was intended to bring over the tank of an engine, when needed, and when not in use it was swung back, so as to stand parallel or nearly so to the track, and there it was held in place by a wire attached to a stake standing in the bank.

At the time of the accident it was not in use, and there is evidence tending to prove that the wire was not fastened to the arm, and nothing to prevent its swinging around, except the fact that the upright pipe leaned a little away from the track.

The last that was seen of deceased before the accident, was just as the train was descending the grade to Sugar Creek, a Mrs. McGraw saw him sitting on the south side of the coal car, with his feet inside; just then she says the engine whistled, and the train gave quite a heavy jerk.

Just as the whistle sounded, she says, he began to raise

upon his feet, and at that moment the smoke came between them, and she lost sight of him.

Green, the conductor, says that this jerking was only the ordinary jerk caused by taking up the slack of the train.

When the train reached the crossing near Bloomington, it was found that deceased was not on it, and on going back, he was found lying at the foot of the hill, which is there about sixteen feet high, and about eighteen or twenty feet east of the water spout. He was struggling and endeavoring to rise, but was unconscious, and remained so until his death, a few days afterward.

He had a wound upon his head, upon a line with the top of his right ear, about an inch and a half back of the ear. The inner table of his skull was broken. The wound extended about an inch to an inch and a quarter across his head. The cap of deceased had a straight cut in it, at the spot which would be over the wound on his head, when worn. Nothing was found on the side of the bank or at the foot where he lay, of such a nature as to account for the wound. No mud was found upon the cap, although the ground was muddy. The only indications showing when deceased first struck the ground, were his foot-prints at one point only, some six or eight inches deep in the mud, and pointing in the direction where he was found.

While it is impossible to say just what position deceased was occupying at the time of the accident, it seems quite probable from the foregoing facts and circumstances that he was struck by the end of the water-spout and thrown from the train. His cap not being muddy, and the two foot-prints, seem to show clearly that he did not fall upon his head, but must have first struck upon his feet and then rolled down the bank; there were no rocks or timbers, or anything with sharp edges or corners on the side of the bank to cause the wound. We are not prepared to say that the jury might not properly find that deceased was struck by this water-pipe.

That it was negligence in the company to leave it in the condition shown by the evidence, we think is clear.

If the wire was broken, as contended, it was at liberty to swing around and stand directly over the track.

Objection is made to the instructions in reference to the measure of damages, but it is unnecessary to notice the objection, as the amount of the verdict is less than the wages of deceased, after deducting his living expenses, would amount to up to the time he reached his majority.

As to the other instructions we think they are substantially correct.

Believing that substantial justice has been done, the judgment will be affirmed.

*Judgment affirmed.*